(112 App. Div. 751)

CADIGAN v. GLENS FALLS GAS & ELECTRIC LIGHT CO.

(Supreme Court, Appellate Division, Third Department. May 2, 1906.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—SAFE PLACE TO WORK.
    Where the superintendent of defendant gas company ordered plaintiff's
    general foreman to attach a valve on a six-inch gas main Y while the gas
    was on, without providing a rubber bag as usual to prevent the escape
    of gas from the pipe, knowing that the work was dangerous, and plaintiff
    was without knowledge of the danger, and was injured by an explosion
    which followed, whether defendant was guilty of negligence in failing
    to provide plaintiff with a reasonably safe place in which to work
    was for the jury.
    [Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Master and Serv-
    ant, § 1014.]

2. SAME—KNOWLEDGE OF PLAINTIFF.
    In an action for injuries to a servant while assisting in attaching a
    valve to a six-inch gas pipe Y while the gas was turned on, whether
    plaintiff, from his knowledge of the business and his familiarity with
    the situation, knew or should have known that the gas was on, and that
    the work was dangerous, was for the jury.
    [Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Master and Serv-
    ant, §§ 1072, 1096.]

3. SAME—CAUSE OF ACCIDENT—EVIDENCE.
    Where, in an action for injuries to a servant by an explosion of gas
    alleged to have been caused by contact of gas escaping from defendant's
    mains with a gas jet on the floor above, there was evidence that no
    spark alleged to have been emitted by a chisel which plaintiff's fellow
    servant was using on the gas pipe was seen prior to the explosion, but
    that the workmen heard an explosion before they saw a light, a non-
    suit was not sustainable on the ground that the explosion was caused by
    the chisel spark.

4. SAME—FELLOW SERVANTS.
    Where a master was negligent in putting his servant in a place sur-
    rounded by dangers unknown to and unexpected by the servant, the
    master could not shield itself from liability for injuries to the servant
    by proof that the act of plaintiff's fellow servant brought about the in-
    jury which the hidden dangers of the place made probable.

5. SAME—ASSUMED RISK—QUESTION FOR JURY—EMPLOYERS' LIABILITY ACT.
    Where an action was brought by a servant for injuries by an explosion,
    under Employers' Liability Act, Laws 1902, p. 1748, c. 600, and plaintiff
    testified that he had no knowledge of the danger, that he believed that

the gas pressure on the pipe he was working on had been turned off, and that the gas that was in the pipe was only such as would naturally form in the pipe after the pressure was turned off, the question of plaintiff's assumption of the risk was for the jury.

Appeal from Trial Term.

Action by Timothy Cadigan against the Glens Falls Gas & Electric Light Company. From a judgment dismissing the complaint, plaintiff appeals. Reversed. New trial ordered.

The plaintiff, under the direction of one Moran, the general foreman of defendant's works, and with him and two other men, was taking a plug from a six-inch Y branching off from an eight-inch pipe in the basement of the defendant's works, and inserting a valve in place thereof. It was the duty of the two men to lift and put the valve, which weighed about 100 pounds, in place after the plug was removed. It was the duty of the plaintiff to hold a burlap bag in the pipe to prevent the escape of gas after the plug was taken out and while the valve was being inserted, and of Moran to fit the valve and finish the work. The eight-inch pipe connected the works with the main holder, which supplied gas in the village. The work was being done in the basement of the building, a room about 8 by 11 feet and about 6 feet high. The gas works were not shut down while the change was being made, and in some way an explosion occurred, threw down the walls of the building, caused a fire, and quite seriously injured the plaintiff, who brings this action to recover for such injury. He had worked for the defendant about 3½ years, principally upon the streets in making connections in the open air with small pipes. He had assisted twice before in making connections somewhat similar to this in the building, but then the works were shut down so there was no pressure to force the gas from the pipes. Immediately over the room where this work was going on was the meter room, and there was an opening of about two feet between the rooms, which hole was nearly, but not quite, over the pipe where the plug was removed and where the plaintiff was standing, and a gas jet near the hole was always burning in the meter room, with a small light, to show the quality of the gas at any time. The plaintiff knew that, if the gas escaped in an inclosed place and came in contact with the flame, an explosion would result. If the pressure is turned off and the pipe opened, the gas in the pipe naturally comes out into the open air, and the plaintiff swears he supposed the pressure was turned off and that the burlap bag was only being used to hold in the pipe the gas naturally remaining there and which would otherwise escape. When the superintendent directed Moran, the general foreman, to do this work, he told him the gas must not be shut off, as the amount in the tank was low, and Moran told him there was no rubber bags to put in the pipes and that with the pressure on and without the bags the work was dangerous, and the superintendent said they could not wait, the work must be done, and they must take the chance. The plaintiff was not told of the danger, or that the pressure was still on the pipes. In making changes similar to this, the pressure is usually shut off, or a small hole is drilled in the pipe, a rubber bag inserted and then expanded by the air pump, so that it will fill the pipe and prevent the escape of gas. The evidence shows that it is probable that, if either of these methods had been resorted to, the accident would not have happened. It is not quite clear whether the lighted gas in the room above caused the explosion, or whether it arose from a spark caused by Moran using a chisel upon the iron pipe. The witnesses say that they saw no spark or light before they heard the explosion. The notice was served under the employers' liability act. Laws 1902, p. 1748, c. 600.

Argued before PARKER, P. J., and SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

J. Edward Singleton, for appellant.

Potter & Kellogg (J. A. Kellogg and J. H. Barker, of counsel), for respondent.

JOHN M. KELLOGG, J. The defendant owed the plaintiff a reasonably safe place in which to work, free from hidden unexpected dangers known to the master, but unknown to the servant, and by ordering this connection made with the pressure on and without the use of the usual bag a fair question was presented whether the defendant was not negligent in discharging the duty it owed to the plaintiff. The defendant knew that the manner in which it was doing this work was unusual and was dangerous.

The serious question is whether the plaintiff knew that the pressure was on, appreciated the danger, and assumed the risk. His former work had been in making connections in the open air, with small pipes, which connections usually are, and safely can be made, without turning the pressure off. From his knowledge of the business and his familiarity with the situation, did he know, or should he have known from the manner in which the work was being done, that the pressure was still on? He swears the burlap bags were used, as he supposed, to retain in the pipe the gas which was there and which would naturally escape, even though the pressure was turned off. Is that true? If he had reason to believe that the pressure had been turned off, was he negligent in staying at the work after the discovery that such was not the fact? Here the evidence is not entirely clear. Some of it tends to show that some time elapsed between the time the plug was pulled out and the explosion. Others put the explosion at about the time the plug was pulled out. If some time elapsed after the plug was pulled out, would a reasonably prudent man throw down his bag and run, knowing that there was a light over his head which might cause an explosion, or would he deem it his duty to remain and try and hold the gas in the pipe with the burlap bag, hoping to prevent an explosion?

The nonsuit cannot be sustained upon the theory that Moran, while acting as a fellow servant, caused the explosion by producing a spark with his chisel. It is not clear that the explosion did not occur from the gas jet above, and the fact that no spark was seen, and that the workmen heard an explosion before they saw a light, was proper to be considered as to whether a spark or the gaslight caused the explosion. Besides, if the defendant was negligent in putting the plaintiff in this place, surrounded by dangers unknown and unexpected by him, it cannot shield itself by showing that the act of the fellow servant brought about the injury which the hidden dangers of the place made probable. It seems that these questions, and the inferences to be drawn from all the circumstances, were peculiarily for the consideration of the jury, and not for the court. The Employers' Liability Act, Laws 1902, p. 1748, c. 600, required the question of assumption of risk to be submitted to the jury.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.